UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES McCARTY and ROBERT McCARTY, | No. 2:13-cv-00431-KJM-AC |
| Plaintiffs, | |
| v. | ORDER |
| RUSSEL HUMPHREY, in his individual capacity, et al., | |
| Defendants. | |

This matter is before the court on plaintiffs' motion for summary judgment. (ECF No. 70.) Plaintiffs claim they encountered barriers to access at a business complex in Lodi, California, identified as Lakeshore Plaza, and at the law office of defendant Humphrey Law Group, located within Lakeshore Plaza. (Pls.' First Am. Compl. ¶ 11, ECF No. 29.) Defendants oppose the motion. (ECF No. 80.) Defendants counter there are genuine disputes of material facts precluding summary judgment at this stage, and, in the alternative, they argue the barriers have been eliminated. (*Id.* at 4.)

The court held a hearing on the matter on May 22, 2015, at which Catherine M. Corfee appeared for plaintiffs, and Timote F. Tuitavuki appeared for defendants. As explained below, the court GRANTS in part and DENIES in part plaintiffs' motion.

I.     BACKGROUND

Plaintiffs bring this lawsuit under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and related California laws. (*See generally* First Am. Compl., ECF No. 29.) Plaintiffs James McCarty and Robert McCarty each are over eighty years old and disabled. (ECF No. 81 ¶¶ 1–10.) James McCarty describes his disabilities as "impaired mobility, lack of balance, need for a cane or walker, and . . . breathing impairments." (J. McCarty Decl. ¶ 2, ECF No. 70-4.) "One of [his] most trying issues is [his] loss of balance and . . . inability to step upwards, even for a few inches." (*Id.*) Robert McCarty describes his disabilities as "impaired mobility, lack of balance, and need for a cane or walker." (R. McCarty Decl. ¶ 4, ECF No. 70-6.) Defendant Russell Humphrey is an attorney, with his office located at Lakeshore Plaza, 1420 S. Mills Ave., Lodi, California. (ECF No. 29 ¶ 19.) The remaining defendants either own or lease an office at the Plaza. (Corfee Decl. ¶¶ 5–7, ECF No. 70-2.)

On March 14, 2012, plaintiffs claim they visited the Plaza, wanting to meet defendant Humphrey to discuss a separate case that Humphrey had filed against them. (J. McCarty Decl. ¶¶ 6, 8; R. McCarty ¶ 2.) During their visit, they encountered certain accessibility barriers and were unable to meet with Humphrey. (J. McCarty Decl. ¶¶ 12–19, 24–26; R. McCarty ¶¶ 2–3, 7–13.) They visited the Plaza again on March 30, 2012, but again were unable to meet with Humphrey because of the same or similar accessibility barriers. (J. McCarty Decl. ¶ 8.) James McCarty "also sought to inquire about dental implants with Dr. Chao's dental office." (*Id.* ¶ 11.) He "also received a key to the men's restroom . . . on the first floor." (*Id.*) Plaintiffs intend to visit the Plaza again in the near future. (J. McCarty Decl. ¶ 29; R. McCarty Decl. ¶ 17.)

Plaintiffs' first amended complaint, the operative complaint, alleges violations of Title III of the ADA; the Unruh Civil Rights Act, California Civil Code § 51 (Unruh Act); and the Disabled Persons Act (DPA), California Civil Code § 54. (ECF No. 29.) Plaintiffs move for summary judgment on all of those claims. (ECF No. 70.) Defendants oppose (ECF No. 77) and plaintiffs have replied (ECF No. 84).

/////

II.     LEGAL STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[1]

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no *genuine* issue of *material* fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248 (emphasis in original).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

---

[1] Rule 56 was amended, effective December 1, 2010. However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56, Notes of Advisory Comm. on 2010 amendments.

1  A court may consider evidence as long as it is "admissible at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "Admissibility at trial" depends not on the evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 324). The party seeking admission of evidence "bears the burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002). If the opposing party objects to the proposed evidence, the party seeking admission must direct the district court to "authenticating documents, deposition testimony bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86 (9th Cir. 2010). However, courts are sometimes "much more lenient" with the affidavits and documents of the party opposing summary judgment. *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979). Here, plaintiffs raise several evidentiary objections in their reply brief. (*See* ECF No. 84 at 1–6.) The court need not address them because it does not rely on the evidence to which plaintiffs object in reaching its decision on this matter.

III.  DISCUSSION

As noted, plaintiffs move for summary judgment on all their claims against defendants, seeking damages and injunctive relief. (ECF No. 70-1.) After the parties' meet-and-confer efforts, plaintiffs have agreed to "withdraw their request for actual damages and treble damages, thereby limiting the motion to statutory damages." (ECF No. 76 at 1; ECF No. 89 at 1.)

    A.  Legal Framework

        1.  Title III of the ADA

The ADA was adopted to address discrimination against individuals with disabilities. *See Cohen v. City of Culver City*, 754 F.3d 690, 694 (9th Cir. 2014). The statute was enacted on the understanding that discrimination against the disabled is "most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect." *Alexander v. Choate*, 469 U.S. 287, 295 (1985). "Therefore, the ADA proscribes not only obviously exclusionary conduct, but also more subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' full and

4

equal enjoyment of public places and accommodations." *Cohen*, 754 F.3d at 694 (internal quotation marks omitted).  Title III of the ADA prohibits discrimination against people "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodation of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." *Id.* § 12182(b)(2)(A)(iv).  Readily achievable means "easily accomplishable and able to be carried out without much difficulty or expense." *Id.* § 12181(9).  Federal regulations clarify which barrier removals are likely to be readily achievable and provide examples in title 28 of the Code of Federal Regulations section 36.304.  The U.S. Justice Department has referred to these examples as "the types of modest measures that may be taken to remove barriers and that are likely to be readily achievable." Appendix B to Part 36–*Preamble to Regulation on Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities*, 56 Fed. Reg. 35,546 (July 26, 1991); *see also* 28 C.F.R. § 36 App. A.

To prevail on their Title III claim, plaintiffs must show that (1) they are disabled within the meaning of the ADA; (2) defendants are private entities that own, lease, or operate a place of public accommodation; and (3) plaintiffs were denied public accommodations by defendants because of their disabilities. *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).  The parties here do not dispute that plaintiffs are disabled within the meaning of the ADA.  The remaining two elements of an ADA claim are addressed, if at all, under each barrier, as set forth below.

Private parties or the Attorney General may enforce the ADA.  42 U.S.C. § 12188. Specifically, private parties may utilize the remedies and procedures available under the Civil Rights Act of 1964. *Id.* § 12188(a)(1) (citing § 2000a-3(a)).  While a private party may seek equitable relief, monetary damages are unavailable in private suits.  *Molski*, 481 F.3d at 730.  On the other hand, in suits brought by the Attorney General, courts may grant both equitable relief and monetary damages.  42 U.S.C. § 12188(b)(2).

2.     California's Disability Discrimination Statutes

In the disability context, the Unruh Act and the DPA incorporate ADA standards: "A violation of the ADA also constitutes a violation of both the Unruh Act and the DPA." *Californians for Disability Rights v. Mervyn's LLC*, 165 Cal. App. 4th 571, 586 (2008). However, unlike the ADA, the Unruh Act and the DPA allow for monetary damages. The Unruh Act provides for statutory damages of $4,000 for each occasion a disabled person was denied equal access. Cal. Civ. Code § 52(a). The DPA, on the other hand, authorizes minimum statutory damages of $1,000 for each occasion a disabled person was denied equal access. *Id.* § 54.3(a). Because of the overlap between the Unruh Act and the DPA, a plaintiff cannot recover under both. *Id.* § 54.3(c) ("A person may not be held liable for damages pursuant to both this section and Section 52 for the same act or failure to act.").

B.     Barriers

1.     Handicap-Accessible Parking Spaces

It is undisputed that there were not enough handicap-accessible parking spaces at the Plaza in March 2012: There were only two when three were required. (ECF No. 81 ¶ 45.) However, it is also undisputed that in 2013, a new handicap-accessible parking space was added. (*Id.* ¶ 39.) Accordingly, because plaintiffs can only recover injunctive relief under the ADA and because the barrier here has been removed, plaintiffs' ADA claim based on an insufficient number of handicap-accessible parking spaces is MOOT. (ECF No. 89 ("Plaintiffs do not dispute the 'sufficient number of accessible parking[.]'").) Nonetheless, because the violations existed at the time of plaintiffs' visits, plaintiffs have presented a meritorious ADA claim, which necessarily means plaintiffs have established a meritorious claim under the Unruh Act. *See Langer v. Elsinore Pioneer Lumber Co.*, No. 14-08293, 2015 WL 420177, at *4 (C.D. Cal. Jan. 30, 2015).

Accordingly, plaintiffs are GRANTED summary judgment as to their Unruh Act claim based on this barrier. Plaintiffs are awarded $8,000 each based on each of their two separate encounters with this barrier. As plaintiffs conceded at the hearing, they may recover statutory damages for each visit only and not for each barrier encountered under California Civil

Code section 55.56(e).[2] The court thus need not address plaintiffs' eligibility for statutory damages for the other alleged barriers. Accordingly, the court's discussion below is limited to plaintiffs' eligibility for injunctive relief only.

### 2. Number of Van-Accessible Parking Spaces

Plaintiffs argue the Plaza's parking lot did not have a van-accessible space during either of their visits. (ECF No. 4.) But there is no dispute that this barrier has been remedied.[3] (*See* ECF Nos. 70-8, 89.) Accordingly, plaintiffs' ADA claim as to this barrier is MOOT.

### 3. Cross-Slope in Excess of 2 Percent

Plaintiffs argue "[a] portion of the walkway directly in front of the parking lot has a cross-slope in excess of 2%." (ECF No. 84 at 8.)

Here, the court denies plaintiffs' motion as to this alleged barrier because it does not comply with the court's prior order. (Order, ECF No. 69.) Specifically, the court has directed that "[p]laintiffs may only seek relief based on the barriers alleged in the . . . first amended complaint." (*Id.* at 2 (citing *Oliver v. Ralph's Grocery Company*, 654 F.3d 903, 908–09 (9th Cir. 2011). Here, plaintiffs have not shown that this barrier was identified in their first amended complaint, and "the court has denied plaintiffs leave to amend their complaint to add new barriers identified . . . at the July 2, 2014 visit." (Order, ECF No. 69 at 2.) Therefore, the court DENIES plaintiffs' motion based on this alleged barrier.

### 4. Tow Away Sign

Plaintiffs note that "the tow away sign is not in dispute as [p]laintiff[s] concede it is moot." (ECF No. 89 at 1.) The court confirms plaintiffs' concession and DENIES their motion for summary judgment on this alleged barrier as MOOT.

/////

---

[2] "Statutory damages may be assessed . . . based on each particular occasion that the plaintiff was denied full and equal access, and not upon the number of violations of construction-related accessibility standards identified at the place of public accommodation where the denial of full and equal access occurred." Cal. Civ. Code § 55.56(e).

[3] This is one of many "disputes" no longer alive as of the time of the hearing, reflecting lack of proper preparation and meaningful meet and confer with resultant wasting of the court's time, and an unnecessary expenditure of attorney time to respond.

1         5.      <u>Directional Signage For the Path of Travel</u>

2       "Plaintiffs do not dispute the directional signage for the path of travel from the public

3 street right of way . . . ." (ECF No. 89 at 1.) The court confirms plaintiffs' concession and

4 DENIES their motion for summary judgment on this barrier.

5         6.      <u>Directional Sign at the Stairway</u>

6       Plaintiffs seek "injunctive relief requiring a directional sign [near the stairway]

7 directing the disabled to the elevator because it is a juncture where the able bodied have access but not

8 the disabled." (ECF No. 89 at 4.) Plaintiffs, however, have not met their burden to show the absence

9 of a genuine dispute that such a sign is necessary. Nor does their expert witness identify the lack of

10 such a sign as a potential violation. Therefore, the court DENIES plaintiffs' motion as to this barrier.

11         7.      <u>Stairway Handrails</u>

12       Plaintiffs argue there were non-compliant stairway handrails at the Plaza. (ECF

13 No. 70-1 at 8.) Specifically, they "dispute the nosings and height" only. (ECF No. 89 at 1.)

14       Handrails must have the following features, among others: "(5) Top of handrail

15 gripping surface shall be mounted between 34 in and 38 in (865 mm and 965 mm) above stair

16 nosings and (7) Ends of handrails shall be either rounded or returned smoothly to . . . wall . . . ."

17 ADA Accessibility Guidelines (ADAAG) 4.9.4.[4] "Nosings" are the edges of steps. *Id.* § 4.9.2–

18 4.9.3. Here, plaintiffs' expert in his report provides that both of those features were absent as of

19 the date of his last survey. (ECF No. 70-7, Ex. A at 9–10.) Defendants admit as much. (ECF

20 No. 81 ¶¶ 48–49.)

21       Plaintiffs' motion for summary judgment is GRANTED as to this ADA claim for

22 statutory handrails.

23 /////

---

[4] "Promulgated by the Attorney General to carry out the provisions of the ADA, these guidelines lay out the technical structural requirements of places of public accommodation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (internal quotation marks, citation omitted). The Ninth Circuit has noted, "obedience to the spirit of the ADA does not excuse noncompliance with the ADAAG's requirements." *Id.* (internal quotation marks omitted). "The ADAAG's requirements are as precise as they are thorough, and the difference between compliance and noncompliance with the standard of full and equal enjoyment established by the ADA is often a matter of inches." *Id.* at 945–46.

        8.      <u>Surface Slope</u>

Plaintiffs argue, "the new double disabled parking that was added in front of the building when facing the building from the parking lot, the new disabled parking space on the right of the van accessible access aisle has a surface slope in excess of 2%." (ECF No. 89 at 5.) In addition, plaintiffs argue, "[t]he new third disabled access aisle surface slope located in the parking lot closest to S. Mills Avenue was measured at 3.9% using the same level and fails to meet the federal and state disabled access code requirements." (*Id.*) If true, these conditions constitute violation of the ADA. *Dodson v. Joseph Esperanca, Jr., LLC*, No. 12-02132, 2013 WL 6328274, at *5 (E.D. Cal. Dec. 4, 2013) (citing 28 C.F.R. pt. 36, App. D, section 4.6.3; 36 C.F.R. pt. 1191, App. D., section 502.4).

Defendants note only generally that they "are prepared to stipulate there remain several barriers that, arguably, remain [sic]." (ECF No. 90.) Specifically, defendants note, "[p]laintiffs may argue . . . that the disability parking stalls have more than a 2% grade. Either of these issues could be agreed upon as issues legitimately before the court." (*Id.* at 1.) In their response to plaintiffs' separate statement of undisputed facts, defendants admit that the surface slope barriers identified by plaintiffs exist; they present no evidence to the contrary. The court GRANTS plaintiffs' motion for summary judgment based on their ADA claim as to these barriers.

        9.      <u>Men's Restrooms</u>

Plaintiffs state, the "side grab bar in the men's bathroom near Suite H on the first floor does not extend fifty-four inches (54") from back of wall on the first floor." (ECF No. 81 ¶ 54.) Here again, defendants admit as much. (*Id.*) Plaintiffs also state the "front end of side grab bar in men's bathroom near Suite H men's on the bottom floor does not extend twenty-four inches (24") minimum beyond front of toilet." (*Id.* ¶ 55.) Defendants admit this as well. (*Id.*) The "rear grab bar in [the] men's bathroom near [the] Suite H men's restroom on the bottom floor does not extend twenty-four inches (24") minimum beyond front of toilet." (*Id.* ¶ 56.) Defendants admit this too. (*Id.*) Finally, the "rear grab bar in the restroom located in the dental office of Dr. Mark Chao, DDS, Suite D, does not extend forty-two inches (42") from [the] side

1  wall in the restroom of Suite D, the downstairs restroom closest to Dr. Mark Chao, DDS,
2  owner/tenant of Suite D." (*Id.* ¶ 57.) Defendants admit again. (*Id.*) And if the conditions are
3  accurately described, and if the restrooms are places of public accommodation, plaintiffs may
4  have identified violations of the ADA. *See* ADAAG 4.17.6.

5  There is no dispute that "the public had access to the key to use the restrooms."
6  (*Id.* ¶ 53.) But at the same time, defendants claim, "[t]he bathrooms at the property are kept
7  locked at all times and anyone using them needs a key to enter the locked doors. The bathrooms
8  are meant for employees of the property only, not patrons." (ECF No. 80 at 21.) While
9  "[d]efendants do not dispute there were times when tenants allowed non-employees to use the
10 restrooms[,] [w]hen the key was given to a patron it was in error as the bathrooms are closed to
11 the public." (*Id.*; *accord* Humphrey Decl. ¶¶ 41–42.)

12 When a portion of a facility is open to the public, "the portion that is closed to the
13 public is not a place of public accommodation and thus is not subject to Title III of the ADA."
14 *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1048 (9th Cir. 2008) ("the employees-only restroom was
15 not a place of public accommodation"). Viewing the evidence in the light most favorable to
16 defendants as non-moving parties, the court finds there is a dispute as to whether the restrooms at
17 the Plaza are open to the public or to the tenants of the Plaza only. Plaintiffs have not met their
18 burden to show the restrooms are places of public accommodation.

19 Accordingly, plaintiffs' motion for summary judgment as to the restroom's
20 compliance with ADA is DENIED.

21     C.    Joint and Several Liability

22 Plaintiffs argue all of the named defendants are jointly and severally liable for the
23 barriers at the Plaza. (ECF No. 70-1 at 10.) Defendants conceded this point at the hearing. The
24 ADA's prohibitions against discrimination apply to "any person who owns, leases (or leases to),
25 or operates a place of public accommodation." 42 U.S.C. § 12182(a). The express terms of the
26 ADA have been construed to hold a landlord and a tenant liable for noncompliance with the
27 ADA. *Botosan v. Paul McNally Realty*, 216 F.3d 827, 832 (9th Cir. 2000); *Gutierrez v. Leng*,
28 No. 14-01027, 2015 WL 1498813, at *12 (E.D. Cal. Mar. 31, 2015).

In *Botosan*, the appellate court noted the legislative history of the ADA supports this construction of the statute:

> This [provision] makes it clear that the owner of the building which houses the public accommodation, as well as the owner or operator of the public accommodation itself, has obligations under [the ADA]. For example, if an office building contains a doctor's office, both the owner of the building and the doctor's office are required to make readily achievable alterations. It simply makes no practical sense to require the individual public accommodation, a doctor's office for example, to make readily achievable changes to the public accommodation without requiring the owner to make readily achievable changes to the primary entrance to the building.
>
> Similarly, a doorman or guard to an office building containing public accommodations would be required, if requested, to show a person who is blind to the elevator or to write a note to a person who is deaf regarding the floor number of a particular office.
>
> The amendment [adding section 12182(a)] also clarifies that entities which lease public accommodations are covered by the requirements of this title.

*Botosan*, 216 F.3d at 832 (citing H.R. Rep. No. 101-485(III), at 55–56 (1990).)

Defendants will be jointly and severally liable for the ADA violations at the Plaza.

D.  <u>Defendants' Request for Consideration of Newly Discovered Evidence</u>

On May 15, 2015, seven days before the hearing on plaintiffs' motion for summary judgment, defendants filed a "request for court's consideration of newly discovered evidence in opposition to summary judgment." (ECF No. 85.) Defendants reported, "By sheer luck and good fortune a contractor for Defendants, Mr. Duke, made contact with DeAnne Caron, the individual that did Plaintiffs' initial ADA inspection of the property." (*Id.* at 2.) Apparently, Mr. Duke contacted Ms. Caron "regarding her inspection report and improvements Mr. Duke was working on at the property." (*Id.*) When defendants' counsel learned about their conversation, he contacted Ms. Caron on April 8, 2015. (*Id.*) What he learned from her was shocking, he claims. (*Id.*) Defendants' counsel states as follows:

> In essence, Ms. Caron reported she was tricked by Plaintiff James McCarty when she initially went to Defendants' property. Plaintiff James McCarty, through "false pretenses", led Ms. Caron to believe that he owned the property, not the Defendants whom were unknown to Ms. Caron, and that the inspection was for his own personal use. Plaintiff James McCarty asked Ms. Caron what was wrong with the property and she responded. As she responded

11

> Plaintiff James McCarty asked her to write it all down. The result was the accessibility report Plaintiffs' relied upon to file their First Amended Complaint.
>
> Ms. Caron specifically and unambiguously stated that Plaintiff James McCarty told her Plaintiffs were angry at Mr. Humphrey for representing Connie Moreno in a case against the McCartys' business (Moreno Litigation). Ms. Caron further stated **the reason Plaintiff James McCarty was at the property was because he was angry with Mr. Humphrey over the Moreno Litigation.**
>
> Plaintiff James McCarty contacted Ms. Caron at a later date to conduct a comprehensive inspection of the property. Ms. Caron declined to work with Plaintiff James McCarty for any purpose.

(*Id.* at 3 (emphasis in original).)

Defendants request that the court re-open discovery so that they can take a formal statement from Ms. Caron and present it to the court in support of their opposition to summary judgment. (*Id.* at 4.) They argue:

> Ms. Caron's statement is crucial to Defendants' case and their response to summary judgment. Her statement provides direct evidence showing the bad faith engaged in by Plaintiffs and directly proves Plaintiffs did not go to the property as claimed in their First Amended Complaint. In fact, Ms. Caron's statement is in direct contradiction of Plaintiff James McCarty's declaration filed in support of Plaintiffs' motion for summary judgment.

(*Id.* at 6.)

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). The party seeking a Rule 56(d) continuance bears the burden of proffering facts sufficient to satisfy the rule's requirements. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1996). In ruling on a 56(d) motion, a district court considers: (1) whether the movant had sufficient opportunity to conduct discovery, *see Qualls By and Through Qualls v. Blue Cross of Calif., Inc.*, 22 F.3d 839, 844 (9th Cir. 1994); (2) whether the movant was diligent,

*see Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005 (9th Cir. 2002); (3) whether the information sought is based on mere speculation, *see Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1436–37 (9th Cir. 1995); and (4) whether allowing additional discovery would preclude summary judgment, *see Michelman v. Lincoln Nat. Life Ins. Co.*, 685 F.3d 887, 892 (9th Cir. 2012).

There is no bright-line rule to follow in applying Rule 56(d) based on the timing of the summary judgment motion. *See, e.g.*, *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of the Ft. Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003). A district court's denial of a request for a Rule 56(d) continuance is reviewed for abuse of discretion. *Getz v. Boeing Co.*, 654 F.3d 852, 867–68 (9th Cir. 2011).

Here, the record shows a lack of diligence on defendants' part. Defendants have known about Ms. Caron since at least as early as 2013, and decided not to seek information from her before now. Defendants' counsel expressly states he "did not initially intend to conduct discovery with Ms. Caron." (ECF No. 85 at 10 ¶ 12.) *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006) (continuance properly denied where counsel made strategic decision not to conduct discovery before cut-off date). Moreover, defendants speculate only and after no specific argument that additional discovery is likely to preclude summary judgment. The court does not infer from Ms. Caron's purported statements to defense counsel that she understood plaintiffs never visited the Plaza, even if they first contacted her under false pretenses at the same time, plaintiffs have presented their own declarations (ECF Nos. 70-6, 70-7) under penalty of perjury that they went to the Plaza on two occasions and encountered the mentioned barriers. Defendants could have probed this threshold issue long ago, whether or not they learned something recently from Caron. Defendants' request is DENIED.

IV.     CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part plaintiffs' motion. Plaintiffs are awarded $8,000 each in statutory damages in light of the court's granting their Unruh Act parking space claims. Plaintiffs are directed to submit a proposed order

/////

13

within twenty-one (21) days effecting their requested injunctive relief as consistent with this order.

In light of the court's denial of summary judgment in part, a final pretrial conference is set for **November 19, 2015**, at which a trial date will be set. The parties shall file a joint pretrial statement in advance of the conference, as required by the court's scheduling order.

IT IS SO ORDERED.

DATED: September 14, 2015.

_____
UNITED STATES DISTRICT JUDGE